**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

                                    CASE NO. 05-80554
      Plaintiff,                      HON. LAWRENCE P. ZATKOFF

v.

VICTOR CASTANO and
MELISSA SUE GORDON,

      Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 8, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants Victor Castano's and Melissa Sue Gordon's Motion to Suppress Evidence. Plaintiff United States has responded. In addition to the briefs submitted by the parties, the Court conducted an evidentiary hearing on September 8, 2005. For the reasons set forth below, Defendants' Motion is DENIED.

**II. BACKGROUND**

On June 17, 2005, Defendant Victor Castano was charged by Indictment with Felon in Possession of a Firearm, 18 U.S.C. § 922(g); Possession with Intent to Distribute Marijuana, 21 U.S.C. § 841(a)(1); and Carrying a Firearm During a Drug Trafficking Crime, 18 U.S.C. § 924(c). Defendant Melissa Sue Gordon was charged by Indictment with Possession with Intent

to Distribute Marijuana.  The facts concerning their arrest, as established at the September 8, 2005 evidentiary hearing, are detailed below.

### III. ANALYSIS

#### A. Motion to Suppress Evidence

By their motion, Defendants seek an order suppressing the firearm, ammunition, and marijuana seized by St. Clair County Sheriffs on June 17, 2004.  Defendants argue that "the sheriffs lacked probable cause to arrest Defendant or even reasonable suspicion to conduct an investigative traffic stop."  Defendants' Motion, at 3.  In response, the Government contends that the arrest was based on information obtained from a confidential informant.  The Government further contends that the informant was known to law enforcement, had proved reliable in the past regarding narcotics crimes, and that the information provided to the sheriffs was corroborated prior to the search.  *See* Government's Brief, at 5.

#### B. Evidentiary Hearing

On September 8, 2005, the Court conducted an evidentiary hearing on Defendants' Motion to Suppress.  At the hearing, the Government called St. Clair County Sheriffs Deputies Rick Mouilleseaux and Jeffrey Green as witnesses.  Both deputies were involved in the investigation leading to the arrest of Defendants.

Prior to June 17, 2004, Mouilleseaux received information from the Confidential Informant stating that there may be a large-scale marijuana transaction upcoming.  Mouilleseaux had worked with the Confidential Informant "quite often" since the early 1990's and believed that the Confidential Informant was reliable.  The Confidential Informant would generally qualify his

statements by saying "I think," "I heard," or "I know." On June 17, 2004, at 3 p.m., the Confidential Informant informed Mouilleseaux that he "knew" that there would be a large scale marijuana transaction that day at the Norway Bar in Avoca. The transaction would involve a large, Hispanic man named Victor. Based on the reliability of the Confidential Informant and the "I know" qualifier used to describe the information, Mouilleseaux and seven to eight other St. Clair County Sheriffs Deputies commenced surveillance of the Norway Bar in Avoca. Around 4:30 p.m., deputies observed a black and white pick-up arrive at the parking lot of the Norway Bar. A large, Hispanic man and a woman (later identified as Defendants Victor Castano and Melissa Sue Gordon) exited the truck and went into the bar.

At 5:05 p.m., the Confidential Informant called Mouilleseaux and informed him that Victor would be driving a black and white pick-up and that the marijuana was in a box in the back of the pick-up. The Confidential Informant also indicated the license plate of the pick-up.

Around 5:30 p.m., Defendants returned to the truck. As the truck drove off, deputies identified the truck's license plate and radioed to another unit to stop the truck.

Deputy Jeffrey Green testified that he was parked about a mile from the bar, and that when the truck left the bar, he was informed by radio to stop the truck. Green pulled out behind the truck in his marked squad car and made the traffic stop about a mile south of the bar. Green did not pull the truck over based on any traffic violations. Instead, it was Green's understanding based on radio communication with other deputies that there would be a box of marijuana in the bed of the truck, and that the truck would be driven by a large Mexican male with a female passenger.

After making the stop, Green had the Defendants get out of the vehicle. He then went to the bed of the truck and, standing approximately three feet away, observed a very large box. From

3

where Green stood, he was able to peer through an opening in the top of the box and believed that what he saw inside the box was marijuana. An evidence technician then secured the box as evidence. Another deputy conducted an inventory search of the cab of the truck and discovered a firearm.

On cross-examination, defense counsel questioned Deputy Mouilleseaux regarding the credibility of the Confidential Informant. Mouilleseaux testified that the Confidential Informant was not being paid for the information; neither was he working off a charge with the police.

### C. Findings of Fact

As to the credibility of the witnesses, the Court was guided by the appearance and conduct of the witnesses, by the manner in which they testified, and by the character of the testimony given. The Court had an opportunity to view the witnesses' reactions to questions, their hand and eye movement, and their facial expressions. Additionally, the Court considered the witnesses' intelligence, motive, state of mind, demeanor, and manner while testifying. The Court also considered each witnesses' ability to observe the facts to which he or she testified and whether the witness appeared to have an accurate recollection of the relevant circumstances.

The Court finds that Deputies Mouilleseaux and Green were credible witnesses. Additionally, based on the testimony of Deputy Mouilleseaux, the Court finds that the Confidential Informant was known to Deputy Mouilleseaux, had been used for many years, was known to be reliable, and that the Informant qualified the information as being reliable in this instance.

### D. Legal Analysis

Defendants argue that the Government did not have a legal reason to stop Defendants' pick-up truck as Defendants drove away from the Norway Bar in Avoca. St. Clair County Sheriff's

Deputies had not observed any criminal activity, nor had they observed any traffic violations to serve as a basis for a traffic stop. Instead, deputies effected a traffic stop based on information received from the Confidential Informant, and corroborated by the deputies,[1] which led them to believe that Defendants were committing a crime. Defendants are incorrect as a matter of law that this is an insufficient cause for effecting a traffic stop.

In *Alabama v. White*, 496 U.S. 325 (1990), the Supreme Court held that an anonymous tip which had been sufficiently corroborated to indicate reliability, was sufficient to justify an investigatory stop of a suspect's car. In order to make such a stop, police must have "reasonable suspicion" of criminal activity. *See Terry v. Ohio*, 392 U.S. 1 (1968). In *White*, after the suspect was stopped, she consented to a further search of her car, which resulted in the finding of illegal drugs.

In the present case, sheriff's deputies relied on information from a known, reliable confidential informant. As the Court explained in *Adams v. Williams*, 407 U.S. 143, 146 (1972), also dealing with a known, reliable informant, "this is a stronger case than obtains in the case of an anonymous telephone tip." In addition, and as in *United State v. White*, the information in the present case had been independently corroborated by police. Corroboration gives further indication of the informant's reliability because if "an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." *Alabama v. White*, 496 U.S. at 331 (citing *Illinois v. Gates*, 426 U.S. 213 (1983)).

---

[1] Based on their surveillance outside the bar, the Deputies corroborated the following facts obtained from the Confidential Informant: the description of "Victor," the vehicle he was driving, the time of arrival of the vehicle at the Norway Bar, and the license plate of the vehicle.

Once sheriff's deputies lawfully stopped Defendants' pick-up to investigate, Deputy Green observed marijuana through the opening of the large box in the open bed of the truck. If the deputies had not already established probable cause based on the reliability of the Confidential Informant,[2] Deputy Green's observance of evidence of criminal wrongdoing in plain view would certainly give the deputies probable cause to seize the evidence and arrest Defendants. *See Coolidge v. New Hampshire*, 403 U.S. 443 (1971) (explaining the significance of the "plain view" doctrine.)

For these reasons, the Court finds that the June 17, 2004 stop of Defendants' pick-up was lawful, as was the subsequent seizure of evidence and arrest of Defendants.

## IV. CONCLUSION

For the above reasons, Defendants Motion to Suppress Evidence is HEREBY DENIED.

IT IS SO ORDERED.


s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: September 12, 2005

---

[2] *See United States v. Woosley*, 361 F.3d 924, 926-27 (6th Cir. 2004) (concluding that "concluded that "an affidavit including a tip from an informant that has been proven to be reliable may support a finding of probable cause in the absence of any corroboration."); *see also Almeida-Sanchez v. United States*, 413 U.S. 266, 269 (1973) (recognizing the automobile exception to the warrant requirement).

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 12, 2005.

s/Marie E. Verlinde<br>
Case Manager<br>
(810) 984-3290