UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                              Case No. 05-80554
                                                                   Honorable Sean F. Cox

v.

VICTOR CASTANO,

    Defendant.
_____/

## OPINION AND ORDER

Defendant filed a Petition for Writ of Error *Coram Nobis* [#95] to vacate his 2006 conviction for felon in possession of a firearm. The parties briefed the issue in the traditional sense, and the Government was granted the right to file a sur-reply in order to address arguments raised by Defendant in his reply brief. The Court held a hearing on Defendant's Petition on September 21, 2016. On January 24, 2017, the Court granted Defendant's post-hearing motion to supplement the record. The parties then fully briefed Defendant's "Supplemental Brief," which was filed on February 8, 2017. For the reasons that follow, the Court denies Defendant's Petition for Writ of Error *Coram Nobis*.

### I. BACKGROUND

**A.**    **Underlying Case**

In 2005, Defendant was charged with Felon in Possession of a Firearm (Count I), Possession with Intent to Distribute Marijuana (Count II), and Carrying a Firearm in Relation to a Drug Transaction (Count III). The charges stemmed from an arrest by the St. Clair County Task Force ("SCCTF") on June 17, 2004, after members of the SCCTF stopped a black Dodge truck driven by Defendant. The SCCTF found approximately 50 pounds of marijuana boxed in the bed of the truck

and a loaded firearm in the truck console. On June 5, 2005, Defendant told FBI Special Agent William Fleming ("SA Fleming") that it was Defendant's marijuana and he intended to distribute it, but Defendant denied knowledge of the existence of the firearm. *See* Dkt. No. 106, Appendix A at ¶8 and Ex. 4 (June 6, 2005 FD-302). Defendant also stated that he had borrowed the truck from William Scott Lonsby ("Lonsby"), but he picked up the truck at Vernon Rich's ("Rich") house. Defendant pled guilty to Count II. A jury convicted him in February 2006 on Counts I and III (the "2006 trial"), and he was sentenced by Judge Zatkoff. On Defendant's appeal, the Sixth Circuit vacated his conviction on Count III. As Defendant had served 42 months at the time of his re-sentencing on Counts I and II, he was released from custody on March 17, 2009.

**B.     2011 Cases**

In two separate criminal cases filed in 2011 and later consolidated (collectively, the "2011 cases"), Defendant, Rich, Lonsby, Cary "Gun Control" VanDiver ("Gun Control"), and other members of the Devils Diciples Motorcycle Club ("DDMC") were charged with a variety of offenses tied to methamphetamine and firearms. Two trials were held. The first trial took place from September 2014-February 2015 (the "2014 trial"). The second trial, held between September 2015-December 2015 (the "2015 trial"), resulted in Defendant's conviction on four charges, including one count of suborning perjury and one count of obstruction of justice with respect to the 2006 trial. Those two counts stemmed from the solicitation, encouragement, and procurement of false testimony by Keith McFadden ("McFadden") and his girlfriend, Stella Herron ("Herron") at the 2006 trial related to the ownership of the firearm in the console of the truck in which Defendant was

arrested on June 17, 2004.[1]  As discussed below, a number of inconsistencies between testimony offered at Defendant's 2006 trial and testimony offered during the proceedings in the 2011 cases have become apparent to the parties.  SA Fleming is and has been the responsible agent with respect to the investigation of DDMC activities over the past decade (or more), and he was the Government agent at the 2006 trial, the 2014 trial, and the 2015 trial.

**C.     Defendant's Petition**

On June 30, 2014, Defendant filed the instant Petition, wherein he seeks to vacate his conviction on Count I (Felon in Possession of a Firearm) due to what he has labeled "five levels" of fundamental errors he believes occurred at the 2006 trial: (1) the Government relied on the perjured testimony of Rich and Lonsby; (2) the Government failed to disclose impeachable evidence against Rich, one of its primary witnesses; (3) the Government withheld significant evidence that would have suggested Gun Control and/or Rich actually possessed the firearm Defendant was charged with possessing; (4) the Government used three fact witnesses as expert witnesses to establish as fact that, in essence, "weapons are very prevalent in the drug trade;" and (5) the Government shifted the burden of proof to defendant to prove his innocence insofar as suggesting what the testimony of "Gun Control" would have been.  In 2015, this case was reassigned from Judge Zatkoff to the undersigned.

## II. LEGAL STANDARD

---

[1] Shortly before the 2006 trial, Defendant's trial attorney filed a notice of alibi: (a) identifying Herron as the owner of the firearm, and (b) representing that McFadden and Herron had left the firearm in the vehicle while Herron was in nightclubs auditioning as a stripper. McFadden testified for Defendant at trial, and Defendant chose not to call Herron to testify on his behalf.  Instead, Herron was called by the Government as a hostile witness during its rebuttal. Both McFadden and Herron testified at the 2006 trial that the gun was Herron's and that it was left in the truck because she was going into a liquor licensed establishment.

### A.     *Coram Nobis*

> The writ of error *coram nobis* was used as a device for correcting fundamental errors in both civil and criminal cases at common law. *United States v. Johnson*, 237 F.3d 751, 753 (6th Cir. 2001). The writ was suspended in civil cases pursuant to Fed.R .Civ.P. 60(b). *Id.*; *United States v. Morgan*, 346 U.S. 502, 506, 74 S.Ct. 247, 98 L.Ed. 248 (1954). In criminal cases, the Supreme Court held that federal courts retained the power to issue the writ under certain circumstances based on the All Writs Act, 28 U.S.C. § 1651. *Morgan*, 342 U.S. at 506. A writ of error *coram nobis* may be used to vacate a federal conviction after a defendant has already served his sentence and relief under 28 U.S.C. § 2255 is unavailable. *Johnson*, 237 F.3d at 753. A writ of error *coram nobis* is an extraordinary writ. *Id.* at 755. It is used only to review errors of the most fundamental in character which render the proceedings themselves invalid. *Id.* A defendant must demonstrate: 1) an error of fact; 2) unknown at the time of trial; 3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known. *Id.*
>
> *Coram nobis* relief is insufficient if the defendant is merely raising legal challenges concerning the validity of the convictions where the defendant had knowledge of the underlying facts at the time of trial. *Blanton v. United States*, 94 F.3d 227, 230 (6th Cir. 1996). Arguments that were raised or could have been raised on direct appeal are not properly brought on a *coram nobis* petition which must be based on matters not appearing in the record. *United States v. Richard*, 221 F.3d 1337, 2000 WL 875369 (6th Cir. Jun.19, 2000) (unpublished) (citing *United States v. Keane*, 852 F.2d 199, 202-03 (7th Cir. 1988)). A defendant cannot use a *coram nobis* proceeding to renew claims previously rejected in a 28 U.S.C. § 2255 proceeding. *Willis v. United States*, 654 F.2d 23 (8th Cir. 1981). Prejudicial errors and newly discovered evidence do not fall into the category of fundamental errors required to issue a writ of error coram nobis. *See, Moody v. United States*, 874 F.2d 1575, 1577 (11th Cir. 1989).

*United States v. Barrow*, No. 08-CV-10111, 2009 WL 3059154, at *4 (E.D. Mich. Sept. 24, 2009),

*aff'd*, 455 F. App'x 631 (6th Cir. 2012).

### B.     *Brady* **Materials**

> . . . "*Brady* recognizes no distinction between evidence which serves to impeach a government witness' credibility and evidence which is directly exculpatory of the defendant. Both are 'evidence favorable to the accused' and must be disclosed." *Mullins*, 22 F.3d at 1372. *See also Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) ("When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting

4

> credibility falls within [*Brady*]"). The Sixth Circuit has said that "[n]o *Brady* violation exists where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information.'" *United States v. Clark*, 928 F.2d 733, 738 (6th Cir.), *cert. denied*, 502 U.S. 846, 112 S.Ct. 144, 116 L.Ed.2d 110 (1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2nd Cir.1988), cert. denied, 488 U.S. 1040, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989)). *See also, Mullins*, 22 F.3d at 1371–72 ("*Brady* is concerned only with cases in which the government possesses information which the defendant does not, and the government's failure to disclose the information deprives the defendant of a fair trial"); *United States v. Todd*, 920 F.2d 399, 405 (6th Cir. 1990). Moreover, the Sixth Circuit has indicated that there is no violation of *Brady*, unless the undisclosed materials would have led directly to the discovery of admissible evidence. *Phillip*, 948 F.2d at 249–50.

*Lawson v. Warden, Mansfield Corr. Inst.*, 197 F. Supp. 2d 1072, 1091 (S.D. Ohio 2002).

### III.  DISCUSSION

The fourth and fifth errors Defendant raised (fact witnesses as expert witnesses and the Government attorney's comments regarding what Gun Control's testimony would have been) are clearly outside the parameters of *coram nobis* relief.[2]  The Court finds that both of those alleged errors could have been raised on direct appeal because they relate to matters that appear in the 2006 trial record.  The Court holds that Defendant is not, as a matter of law, entitled to *coram nobis* relief on either of those alleged errors.  The Court now turns to the first three alleged errors.

**A.     Testimony of Lonsby and Rich at the 2006 Trial**

Defendant first contends that he is entitled to *coram nobis* relief based on the perjured testimony of Lonsby and Rich.  Defendant argues that the Government cannot use false evidence to convict, nor allow false evidence to go uncorrected.  Defendant also argues that Lonsby was the

---

[2]Defendant also contends that because the Government: (a) did not disclose that Gun Control was linked to other firearms, (b) did not disclose that Rich and Lonsby committed perjury, and (c) argued that guns and drugs go together (without Defendant knowing any of these three things), those errors are problematic with respect to the whole case, even though those errors were "known" at trial.

5

primary Government witness who created the inference that Defendant must have put the gun in the console because Lonsby testified that the gun was not in the truck when Lonsby loaned the truck to Defendant. The Court is not persuaded that such testimony, to the extent that it was perjury, warrants *coram nobis* relief.

At the 2006 trial, Lonsby was the first witness. As he had during all pre-trial interviews since 2004, Lonsby testified that he owned the truck that Defendant was driving when Defendant was pulled over and arrested on June 17, 2004. Lonsby testified that he loaned the truck to Defendant to move a motorcycle. Lonsby also testified, consistent with what he had told investigators since June 8, 2005, that he had the truck washed and cleaned prior to giving it to Defendant on June 17, 2004. Lonsby further testified that: (a) he did not own the gun found in the truck, and (b) there was no gun in the truck when he loaned it to Defendant. Lonsby then testified that he had loaned the same truck to Gun Control on June 14, 2004 (and it was returned on the same day), a representation he first made to investigators on January 18, 2006 (*i.e.*, a month before the 2006 trial). On cross-examination, Lonsby stated—for the first time to anyone—that he loaned the black Dodge truck to McFadden and Herron on June 15 and/or 16, 2004.

Rich was the second witness at the 2006 trial. Rich testified that the black Dodge truck Defendant had borrowed on June 17, 2004 to move a motorcycle belonged to Lonsby. That testimony contradicted what Rich told officers of the St. Clair County Sheriff's Department and SA Fleming on March 11, 2005, when Rich stated that the black Dodge truck driven by Defendant on June 17, 2004 belonged to Rich. Each of Rich and Lonsby testified at the 2006 trial that he had not seen Defendant on June 17, 2004, and that neither Defendant nor the truck were at Rich's house on June 17, 2004.

Defendant argues that Lonsby and Rich perjured themselves when they testified that: (1) the black Dodge truck used by Defendant on June 17, 2004 was Lonsby's truck, (2) Defendant picked up the truck from Lonsby's house, and (3) neither of them saw Defendant on June 17, 2004. The Court is not persuaded that any of Lonsby's and Rich's testimony, in isolation or collectively, warrants *coram nobis* relief. First, Lonsby's and Rich's testimony regarding the ownership and possession of the truck technically was true and did not constitute perjury. The truck was titled and registered to Lonsby, though, as Lonsby later testified, the truck was purchased by, kept, and belonged to Rich (who is married to Lonsby's sister). *See* Dkt. No. 106, Appendix A at 29-30; Case No. 11-20129, Dkt. No. 1092 at 135, 158-59 (Lonsby's 11/3/14 trial testimony). *See also* Dkt. No. 97, Attachment D (in the March 18, 2005 FD-302, it states that on March 11, 2005, nearly a year before the 2006 trial, Rich told SA Fleming that the truck Defendant was driving at the time Defendant was arrested on June 17, 2004 "belonged to" Rich). The Court also is not persuaded that the ownership of the truck had any bearing on the credibility of those witnesses or the outcome of the trial.

Second, the Court finds that the fact that Lonsby and Rich perjured themselves in stating that Defendant picked up the truck at Rich's house, and not Lonsby's: (a) was known to Defendant at trial; (b) was inconsequential to whether Defendant had knowledge or possession of the firearm in the truck on June 17, 2004, and (c) had no bearing on the credibility of Lonsby or Rich, nor the outcome of the trial. Third, Lonsby testified that he had washed and cleaned the truck prior to giving it to Defendant on June 17, 2004, and that the gun was not in the console. There does not appear to be any basis for this statement, which, if believed, suggests that: (a) the gun was not in the truck when Defendant picked up the truck, and (b) as such, Defendant must have placed the gun in

7

the console. Lonsby, however, also testified that he had loaned the truck to McFadden and his girlfriend (Herron) on June 15 or 16, 2004. This testimony also was perjury as it not true, but it was consistent with, and presented in furtherance of, the perjured statements that Lonsby and Defendant knew McFadden and Herron were to give, and gave, later at the trial.

Fourth, a preponderance of evidence shows that the testimony of Lonsby and Rich that they did not see Defendant on June 17, 2004 was false, especially as it relates to Rich. The Government alleged in the 2011 cases that both Lonsby and Rich saw Defendant on June 17, 2004, and one of Defendant's co-defendants in the 2011 cases testified that he witnessed Rich packaging marijuana with Defendant that day. The Court finds that: (1) this perjured testimony was known to Defendant at the time of trial, (2) the perjured testimony was far more beneficial to Defendant than if Lonsby and Rich had told the truth about having seen him on June 17, 2004, and (3) such perjured testimony did not have any bearing on the outcome of the trial.

Finally, and most significantly, Defendant was not only aware of the perjured testimony that McFadden and Herron would give (and gave) at the 2006 trial, but Defendant actually conspired to develop McFadden's and Herron's perjured testimony for the purpose of proving that Defendant did not know about or possess the firearm in the console. The following information supports the conclusion that Defendant knew about, and was involved in, plotting perjured testimony by McFadden and Herron at the 2006 trial.

    i.      On May 30, 2009, McFadden was interviewed by the FBI and stated that: (1) McFadden was paid $250.00/day by Defendant to provide false testimony at Defendant's trial, (2) Defendant gave McFadden five poundsof marijuana after the trial, and (3) the gun Defendant was arrested with was brought to Michigan by Gun Control.

    ii.     On September 2, 2009, Defendant was interviewed by the FBI. Defendant discussed: (1) Defendant's ongoing marijuana distribution activities with Rich (allegedly

        involving hundreds of pounds of marijuana), (2) Defendant's frustration "about the gun charge" at the 2006 trial because the gun had been brought to Michigan and left in the truck by "Gun Control," (3) that Defendant had been contacted by Rich prior to trial and been advised that McFadden would take responsibility for the gun, (4) how Defendant, Gun Control, Rich, and McFadden met in August 2005 to discuss McFadden's false testimony, (5) that McFadden and Herron came to Michigan in January 2006 for the trial, (6) that Defendant knew McFadden and Herron would be lying–and did lie–on the stand at the 2006 trial, and (7) how Defendant, McFadden, Herron, and others had numerous conversations about the false testimony McFadden and Herron would present about ownership/possession of the firearm found in the console of the truck Defendant was driving when arrested on June 17, 2004.

   iii.    Edward Taylor testified at the 2014 trial that: (1) Taylor was with Defendant and Rich when they packaged the marijuana Defendant had when arrested with on June 17, 2004 (Dkt. No. 97, Attachment C at 133-34), (2) Taylor was aware there was normally a gun in the truck Defendant was driving on June 17, 2004 (Dkt. No. 97, Attachment C at 139), (3) on the night before Defendant's arrest, Taylor overheard Defendant ask Gun Control if the gun was in the truck because Defendant needed it "in case things went sour" when Defendant dropped the marijuana off (Dkt. No. 97, Attachment C at 138-39),[3] and (4) Taylor was later told by McFadden that McFadden was supposed to say that the gun found in the truck belonged to Herron (Dkt. No. 97, Attachment C at 150).

Defendant's convictions at the 2015 trial for suborning perjury and obstruction of witnesses in the 2006 trial conclusively demonstrate Defendant's: (a) participation in a scheme to have McFadden and Herron give perjured testimony at the 2006 trial, and (b) knowledge that McFadden and Herron gave perjured testimony at the 2006 trial. Further, the testimony of Taylor constitutes additional evidence that Defendant was guilty of possessing the gun that was in the console of the truck when Defendant was arrested on June 17, 2004.

     As the foregoing analysis demonstrates, Defendant's Petition must be denied. First, the errors of fact cited by Defendant to support his Petition generally were known to him at the time of

---

[3]This was not a story simply concocted by Taylor for the 2014 trial. Taylor also had advised the FBI on January 31, 2008 that, on June 17, 2004, Defendant knew the firearm was in the truck.

9

trial.[4] Second, contrary to Defendant's suggestions, there is no evidence those errors of fact were known to the Government at the 2006 trial. Third, a significant portion of those errors of fact tended to support Defendant's position (*i.e.*, were exculpatory) and made it less likely that a jury would convict him than if the perjured testimony was not presented at trial — or if Rich and Lonsby had testified truthfully about numerous topics at the 2006 trial. Fourth, and most damaging to his Petition, Defendant participated in, and helped formulate and orchestrate, McFadden's and Herron's perjured testimony at the 2006 trial. In fact, due to the anticipated perjured testimony of McFadden and Herron, Lonsby gave perjured testimony at the 2006 trial (*i.e.*, that he loaned the truck to McFadden and Herron on June 15 and/or 16, 2004) that he would not have given otherwise.

For the reasons set forth above, the Court cannot conclude that Defendant has demonstrated

---

[4]The Court is not persuaded by Defendant's primary assertion in his Supplemental Brief, *i.e.*, that his due process rights were violated such that his request for *coram nobis* relief – and a new trial – should be granted.

> [A] motion for a new trial based on the recantation of a material government witness should be granted only if:
>
> > (1) the court is reasonably well satisfied that the trial testimony given by the material witness is false;
> >
> > (2) without the false testimony, the jury might have reached a different conclusion; and
> >
> > (3) the party seeking the new trial was taken by surprise when the false testimony was given, and was unable to meet it or did not know of its falsity until after the trial.

*United States v. Willis*, 257 F.3d 636, 642-43 (6th Cir. 2001) (citing *Gordon v. United States*, 178 F.2d 896, 900 (6th Cir. 1949)). As discussed herein, Defendant was not "taken by surprise when the false testimony was given." *Willis*, 257 F.3d at 643. Because Defendant knew that the testimony was false at trial (or earlier), he cannot satisfy the third element of the *Gordon* test.

that the "errors of fact" attributable to perjured testimony of Lonsby and Rich, individually or in the aggregate, were so "fundamentally unjust" as to render Defendant's 2006 trial invalid. *See Flippins v. United States*, 747 F.2d 1089, 1091 (6th Cir. 1984), *cert. denied*, 481 U.S. 1056 (1987); *Johnson*, 237 F.3d at 755; *Blanton*, 94 F.3d at 231.

## B.     Criminal History and Impeachability of Rich

Defendant asserts that the Government: (1) erroneously represented to the Court at the 2006 trial that Rich did not have any convictions for theft or dishonesty, nor any felony convictions in the last 10 years, and (2) withheld certain criminal history of Rich prior to and at trial.  Defendant's argument is based on a representation by the Government's attorney at the outset of trial that "neither [Lonsby nor Rich] have any convictions involving crimes of theft or dishonesty[,] nor do they have any convictions within the past ten years of a felony nature that would permit them to be impeached as a result of their criminal history."  That statement was made to the Court, but it was not made in front of the jury.

The Government attorney's statement was erroneous, as evidenced by then-Magistrate Judge Laurie Michelson's reasoning for detaining Rich without bond in 2012:

> [Rich] also has a significant criminal history that dates back to the 1980s.  While his early offenses were primarily misdemeanors, he has a 1990 felony conviction out of Kansas for habitually giving worthless checks.  He served some time and then was paroled out of state.  He violated this probation and an absconder warrant was issued. Petitioner has a 2005 felony conviction for possession of marijuana which resulted in 30 days confinement and 2 years probation, and a 2007 felony conviction for possession of methamphetamines which resulted in 2 years probation.

At the time of Rich's detention hearing on August 1, 2012, the Government also told the court that: (1) Rich served 1-3 years for violating probation on the 1990 felony conviction, (2) Rich had a 1991 conviction for larceny in Michigan, and (3) Rich not only had the marijuana conviction in October

11

2005 but was also convicted of a "concealing or misrepresenting a motor vehicle ID," a misdemeanor, at the same time.

Defendant contends that Rich's 2005 felony conviction should have been impeachable under Federal Rule of Evidence 609(a). Defendant asserts that Rich's 1990 felony conviction for habitually giving worthless checks – and Rich's subsequent probation violation on that charge – was a crime of theft and dishonesty and also should have been admissible to impeach Rich's credibility. Defendant also argues that Rich's 2005 conviction for "concealing or misrepresenting a motor vehicle ID" involved a crime of dishonesty that should have been disclosed and been admissible for impeachment purposes. Defendant argues that, if he would have had the ability to impeach Rich with all of these crimes, the outcome of the 2006 trial would have been different because Rich's credibility was crucial to Defendant's conviction.

Although the Court finds that the Government attorney's representation to the Court regarding Rich's criminal history was erroneous, the Court does not find that such error rendered Defendant's conviction fundamentally unjust. First, the discovery provided by the Government to Defendant prior to trial contained Rich's criminal history prior to 2005. Specifically, in the discovery provided to Defendant, there was information regarding: (a) Rich's habitual worthless check sentence from 1990, (b) his probation violation related to that offense, and (c) his conviction for larceny in 1991. Therefore, Defendant had knowledge that Rich had a felony conviction for habitual worthless checks that was less than 10 years old (when factoring in his probation violation) and at least one other conviction for theft and/or dishonesty. Based on that knowledge, Defendant could have challenged the Government attorney's erroneous representation at both the 2006 trial and

on appeal.[5]

Second, although it appears that the Government did not disclose Rich's October 2005 convictions to Defendant prior to or at the 2006 trial, there is no evidence that the Government knew about the October 2005 convictions at the time of 2006 trial. The computerized criminal history ("CCH") for Rich that the Government provided to Defendant was created on December 20, 2005. Rich's 2005 convictions are not listed on it. The CCH consists of 10 pages, and the criminal history concludes at the top of page 10, with plenty of blank space below the entry(ies) on page 10. Significantly, Defendant has not challenged the validity or completeness of the CCH. For these reasons, the Court finds no reason to believe any pages are missing from that CCH or that the Government had any knowledge of the 2005 convictions at the time of the 2006 trial.[6]

Third, the Court finds that Defendant's inability to cross-examine Rich regarding the 2005 convictions was not fundamentally unjust, nor did it render the 2006 trial invalid, because Defendant had opportunities to impeach Rich with respect to at least one other felony conviction and convictions for theft or dishonesty. *Flippins*, 747 F.2d at 1091. The Court also concludes that, even if Defendant would have had knowledge of all Rich's convictions at the time of trial, such knowledge was unlikely to have altered the outcome of his trial because of the perjured testimony

---

[5]As discussed below, including at footnote 8, Defendant's trial attorney was aware of the 2005 convictions on or before June 1, 2006. Although the Court does not conclude that Defendant had knowledge of the 2005 convictions at trial, it is clear that he was aware of those convictions prior to his direct appeal, such that he could have raised in his direct appeal the Government's failure to notify Defendant of the 2005 convictions prior to or at the 2006 trial.

[6]Defendant also asserts that the Government misrepresented that Rich was not under any pending charges at the time of the 2006 trial. The Court finds that the Government's representation was accurate. The 2005 marijuana and motor vehicle offenses were resolved in October 2005, and the Government did not file a firearm charge against Rich with respect to the March 11, 2005 search of his home until 2008.

of McFadden and Herron suborned by Defendant. *Johnson*, 237 F.3d at 755; *Blanton*, 94 F.3d at 231.

Finally, the Court notes that Defendant could have litigated the issue of non-disclosed criminal history of Rich on direct appeal. As the Government suggests, Defendant's trial attorney had information at the 2006 trial to challenge the Government's representations regarding Rich's criminal history, at least with respect to the pre-2005 convictions. Moreover, all of Rich's convictions were known several months prior to the Sixth Circuit reinstating Defendant's appeal and appointing appellate counsel for Defendant.

For all of the foregoing reasons, Defendant is not entitled to *coram nobis* relief with respect to Defendant's alleged inability to impeach or cross-examine Rich regarding Rich's criminal history.

## C.     Other Information that was "Not Disclosed" to Defendant at the 2006 Trial

Defendant contends that, in addition to not disclosing all of Rich's criminal history, the Government did not disclose prior to the 2006 trial: (1) that Government agents had searched Rich's house on March 11, 2005, and seized three firearms, several rounds of ammunition, and a bulletproof vest from Rich's home that day, and (2) the March 18, 2005 FD-302 related to Rich prepared in connection with the March 11, 2005 search.

Defendant argues that the March 18, 2005 FD-302 identified numerous statements attributed to Rich as a result of the March 11, 2005 search. Those statements included the following:

a.  "RICH stated that the truck [Defendant] used during this drug deal belonged to RICH."

b.  "RICH advised that he is upset with [Defendant] because [Defendant] had sex with one of RICH's girlfriends."

c.  "RICH advised that [Defendant's] current girlfriend, MELISSA GORDON, aka LITTLE BIT [also, Defendant's co-defendant at the 2006 trial], is DELBERT

14

>   RUSH's daughter."

> d.   "RICH advised that he has been convicted of cashing 'bad checks' in Kansas and served 3 years in prison."

> e.   "RICH advised that the guns located in the living area, above his garage, do not belong to him and he has no idea whose guns they are."

Defendant contends that the Government also failed to disclose that SA Fleming did not believe some or all of Rich's representations in a. – e.

Defendant argues that: (1) the "exculpatory information" set forth in a. – e. was known to the Government (via SA Fleming)[7] prior to and at the time of the 2006 trial, (2) should have been disclosed to Defendant prior to or at trial, and (3) Defendant was unduly prejudiced by the Government's failure to timely disclose it because his trial attorney could have used the information to impeach Rich. Defendant contends that the March 18, 2015 FD-302 was *Brady* material that the Government had an obligation to disclose to Defendant prior to/at trial. Defendant argues that it was *Brady* material because Rich stated that he had guns on his property, which was relevant to the firearm that was in the console of the truck.

The Government first maintains that the March 18, 2005 FD-302 was provided to Defendant's trial attorney in early February 2006 amongst 26 pages of documents. The Government has produced only a copy of the letter to Defendant's trial attorney to which the 26 pages allegedly were attached. The Government has not, however, provided a copy of the letter with the 26 pages of materials sent to Defendant's trial attorney. Based on the arguments and exhibits that have been produced to the Court, the Court cannot determine whether the Government provided Defendant

---

[7]"Prosecution" for *Brady* purposes includes the prosecutor's entire office and any law enforcement personnel involved in the investigation. *Moldowan v. City of Warren*, 573 F.3d 309, 335 (6th Cir. 2009); *Harris v. Lafler*, 553 F.3d 1028, 1033 (6th Cir. 2009).

with a copy of the March 18, 2005 FD-302 prior to trial. Therefore, for purposes of this Opinion, the Court assumes that the Government did not give Defendant a copy of the March 18, 2005 FD-302 prior to or at trial. Even assuming that the Government did not do so, the Court concludes there was no *Brady* violation or other fatal error.

First, the fact that firearms were seized during the search of Rich's home did not, as Defendant claims, constitute exculpatory or impeachable evidence. Rich never testified at the 2006 trial that he did not own or possess guns. At the 2006 trial, Rich only testified that there was no gun in the truck when he gave it to Defendant. Second, the March 18, 2005 FD-302 indicates that Rich stated that "the guns located in the living area, above his garage, do not belong to him and he has no idea whose guns they are." That statement does not serve as a basis for impeachment, nor does it trigger a *Brady* violation with respect to the issue of whether Defendant possessed the firearm in the console of the truck on June 17, 2004.

Third, there is no evidence that SA Fleming had concluded, at the time of Defendant's trial, that Rich was lying during the March 11, 2005 interview detailed in the March 18, 2005 FD-302. Defendant's argument regarding SA Fleming's belief that Rich's statements on March 11, 2005 were not credible is based on affidavits SA Fleming prepared in September/October 2007 and March/April 2008. In those affidavits, SA Fleming averred that Rich was not trustworthy because Rich had made false statements to the FBI on March 11, 2005 regarding: (a) Rich's involvement in the production of methamphetamine, and (b) Rich's knowledge of any firearms found during the search of his residence. Those affidavits were made more than 18 months and two years, respectively, after the 2006 trial, and the Government represents that SA Fleming developed and reached his conclusion regarding the veracity of Rich's March 2005 statements during his ongoing

16

investigation of DDCM activities. There is no evidence that SA Fleming had knowledge, or that he had any reason to believe, at the time of the 2006 trial that Rich's statements were false. The Court further notes that SA Fleming's beliefs as to the veracity of Rich's statements have no bearing on the issue of whether Defendant possessed the firearm in the console of the truck on June 17, 2004 (approximately 9 months before Rich made the statements at issue).

The Court also finds that Defendant could have raised the issue of the alleged non-disclosure of the March 18, 2005 FD-302 in his direct appeal. Defendant's trial attorney knew of the March 18, 2005 FD-302 by June 1, 2006. On that date, Defendant's trial attorney sent a letter to the Government attorney, with a copy of the March 18, 2005 FD-302 attached to it. In that letter, Defendant's trial attorney asked the Government why it had not disclosed the March 18, 2005 FD-302 to either of Defendant's attorneys.[8] The Court notes, however, that the Sixth Circuit reinstated Defendant's appeal on December 20, 2006 (and, on the same day, appointed Defendant an attorney for his appeal). The reinstatement of Defendant's appeal and appointment of appellate counsel occurred more than six months after Defendant's attorney had a copy of the March 18, 2005 FD-302. The Court therefore finds that the Government's alleged failure to disclose the March 11, 2005 search of Rich's property and the existence of the March 18, 2005 FD-302 were known to Defendant's trial attorney (and, presumably, Defendant's appellate counsel) long before Defendant's direct appeal was briefed.

---

[8]In the August 11, 2006 letter responding to the June 1, 2005 letter from Defendant's trial attorney, the Government referenced information included in Defendant's trial attorney's June 1, 2006 letter that addressed the fact that Rich had been convicted in October 2005 of a marijuana offense and "a motor vehicle related offense, both misdemeanors." In other words, Defendant: (1) would have had knowledge of those 2005 convictions no later than mid-August 2006, and (2) could have challenged the alleged failure to provide evidence of those convictions on direct appeal.

17

For the reasons stated above, the Court concludes that, as it relates to the Government's alleged failure to disclose the March 11, 2005 search of Rich's property and the existence of the March 18, 2005 FD-302, there was no error of a fundamentally unjust character that probably would have altered the outcome of the 2006 trial. Accordingly, the Court denies Defendant's Petition for *coram nobis* relief with respect to his claim regarding the March 18, 2005 FD-302.

**D.     Ancillary Arguments**

Defendant raised two other arguments, neither of which has any merit. First, Defendant suggests that the Government knowingly presented perjured testimony at the 2006 trial when it put Herron on the stand because they knew that she did not own the gun found in the console of the truck driven by Defendant when Defendant was arrested on June 17, 2004. This argument fails for two reasons. As noted above, Herron was not the Government's witness; rather, Defendant had identified Herron as an alibi witness shortly before trial. More importantly, although the Government did not at the time of the 2006 trial deem Herron credible, there is no evidence that the Government knew at the time of the 2006 trial that Herron would perjure herself or that her testimony was false. Second, Defendant contends that the Government presented perjured testimony at the 2014 trial. Even if that is true, what happened at a trial in 2014 has no bearing on whether what happened (or did not happen) at the 2006 trial was of a fundamentally unjust character.

### IV.  CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Petition for Writ of Error *Coram Nobis* [#95].

**IT IS SO ORDERED.**

                                                    s/Sean F. Cox
                                                    Sean F. Cox
                                                    United States District Judge

Dated:  March 22, 2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                    Case No. 05-80554
                                                 Honorable Sean F. Cox

v.

VICTOR CASTANO,

    Defendant.
_____/

## **PROOF OF SERVICE**

    I hereby certify that a copy of the foregoing document was served upon counsel of record on March 22, 2017, by electronic and/or ordinary mail.

                                                 s/Jennifer McCoy
                                                 Case Manager